## John B. Drake v. San Antonio & Aransas Pass Railway Company.

### No. 1468.   Decided October 26, 1905.

**1.—Master and Servant—Negligence—Defective Tools.**

The question of the master's negligence in furnishing the servant defective tools is not to be determined by fixed rules as to the duty of inspection, but is one for the jury if there be room for reasonable difference of opinion as to whether ordinary care has been exercised. Gulf C. & S. F. Ry. Co. v. Larkin, 95 Texas, 225, distinguished. (Pp. 245, 247.)

**2.—Same—Assumed Risk—Inspection.**

The question of assumed risk by the servant of danger from the use of an ordinary tool the defects of which were readily discoverable is also one dependent upon circumstances and affected by necessity for haste as bearing upon his opportunity to know its condition and the danger, and is for the jury where opinions might differ. (P. 246.)

**3.—Same—Knowledge and Capacity.**

The degree of mental capacity and knowledge of tools and machinery possessed by the servant are proper to be considered in determining whether he assumed the risk from readily discoverable defects. (P. 246.)

**4.—Case Stated.**

A servant engaged in loading steel rails on a car was sent upon the car to help put the rails in place as they were passed up, using for the purpose a rail hook put on the car for that purpose; after he had handled a few rails, the hook which was worn too small and not sufficiently curved and the condition of which he had not noticed, slipped from the rail he was lifting, throwing him from the car and injuring him. Held, that the question of defendant's negligence and plaintiff's assumed risk of the danger were for the jury, and the appellate court in reversing a judgment in plaintiff's favor could not render judgment for defendant. (Pp. 244-247.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Drake sued the railway for personal injuries received while in its employ, and recovered judgment. The Court of Civil Appeals reversed and rendered judgment for defendant. Appellee, plaintiff below, then obtained writ of error.

*Williams & O'Connor, Perry J. Lewis* and *H. C. Carter,* for plaintiff in error.—The servant does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure, and the attendant risks, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge. He has a right to rely upon the assumption that the appliances with which he is called upon to work are reasonably safe. He is not required to exercise ordinary care to see whether this is true or not. 1 Labatt on Master and Servant, p. 1138; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Texas & P. Ry. Co. v. Eberheart, 91 Texas, 324; Bookrum v. Galveston, H. & S. A. Ry., 57 S. W. Rep., 919; Galveston, H. & S. A. Ry. v. Smith, 57 S. W. Rep., 1001; Missouri, K. & T. Ry. Co. v. Milam, 20 Texas Civ. App., 696; Missouri, K. & T. Ry. Co. v. Baker, 58 S. W. Rep., 966; International & G. N. Ry. Co. v. Elkins, 54 S. W. Rep., 933; Galveston, H. & S. A. Ry. v. Hampton, 59 S. W. Rep., 928.

The Larkin case merely holds that the master shall not be required to inspect the tool or appliance, unless under the same or similar circumstances an ordinarily prudent person would have done so; this relieves him of no duty formerly held to be upon him. Nor does the court in the Larkin case establish a new rule as to when a question of negligence is one of law and when it is a question of fact.

Though the employe knew of the danger, his right to recover for injuries resulting therefrom would not necessarily be defeated if he was acting at the time under the immediate orders of a superior. The following authorities sustain this view: Gulf, C. & S. F. Ry. Co. v. Duvall, 12 Texas Civ. App., 361; Galveston, etc., Ry. v. Sanches, 65 S. W. Rep., 893; English v. Chicago, M. & St. P. Ry. Co., 24 Fed. Rep., 906; Greenleaf v. Illinois C. Ry. Co., 29 Iowa, 14; Kray v. Chicago, R. I. & P. Ry. Co., 32 Iowa, 357; Louisville, E. & St. L. Con. Ry. Co. v. Hanning, 131 Ind., 528; Stephens v. Hannibal & St. J. Ry. Co., 86 Mo., 221; Ballard v. Chicago & R. I. Ry. Co., 51 Mo. App., 453; Nall v. Louisville, N. A. & C. R. Co., 129 Ind. 260; Thrussell v. Handyside, 20 Q. B. D., 359.

In the case of Lee v. Woolsey, 109 Pa. St., 124, it was held: "Where a laborer, while working under the eyes and voice of his employer, who was urging speed, and saying 'all right,' did not think at the moment, owing to this urgency, of a danger of which he had some previous knowledge, and in consequence was injured, held that he was not deprived of his remedy." We could call the court's attention to numerous decisions which lay down the same doctrine, but the rule is so well settled that we deem it unnecessary. However, we will ask the court to read the following cases: Norfolk & Western R. Co. v. Ward, 24 Law Rep. Ann., 717; McGhee v. Bell, 38 S. W. Rep., 702; Parker

v. South Carolina & G. Ry. Co., 26 S. E. Rep., 669; International & G. N. Ry. v. Harris, 95 Texas, 346.

The Court of Civil Appeals erred in sustaining the appellant's first assignment of error and in finding and holding, as a matter of law, that the plaintiff could not recover, because in the ordinary discharge of his duty he must necessarily have known of the defect in the hook and the consequent danger of using it upon the occasion of his injury, and .in holding that the evidence showed that the plaintiff had no case and .in reversing the judgment and rendering a judgment against the plaintiff; because the evidence tended to show that the defendant was guilty of negligence in furnishing plaintiff a defective hook; and the evidence further tended to show that the plaintiff did not know of the defective condition of the hook, and did not have an opportunity to discover its defective condition prior to his injury; and the evidence established facts which required the issues in the case to be submitted to the jury.

The courts, in determining whether it was the master's duty to inspect, or whether he might rely upon the servant discovering the defect, have never looked so much to the nature of the tool as they have to the circumstances surrounding its use by the servant, especially to the nature of the defect, the presence or absence of danger, and its ordinary use, and the ability on the part of the servant to discover the defect, coupled with an opportunity on his part, in the ordinary discharge of his duty, to discover said defect. International & G. N. Ry. Co., v. Elkins, 54 S. W. Rep., 933; Anderson v. Minnesota & N. W. Ry. Co., 39 Minn., 523; Texas C. Ry. Co. v. Fox, 59 S. W. Rep., 49; Galveston, H. & S. A. Ry. Co. v. Hampton, 59 S. W. Rep., 928; Norfolk, etc., Ry. Co. v. Ward, 24 Law Rep. Ann., 717; East T., etc., Ry. Co. v. Duffield, 18 Am. & Eng. R. R. Cases, 35; 1 Shear & Red on Negligence (5th ed.), sec. 213; International & G. N. R. R. Co. v. Moynahan, 76 S. W. Rep., 803.

Another element in this case, which we believe the Court of Civil Appeals has overlooked, is the question of plaintiff being a man of less than ordinary intelligence. Although the court had ruled that evidence of plaintiff's mental condition was not admissible, by sustaining the demurrer to the allegation which set up this condition, the plaintiff's counsel offered .to prove by the mother of plaintiff, and also by Dr. Lankford, that the plaintiff was not a man of ordinary intelligence. In fact, we unhesitatingly say that we could have established, without difficulty, the fact that plaintiff was what might be termed "half-witted." The court, consistent with the ruling which it had made upon the pleadings, excluded the testimony. The plaintiff excepted; but, as the verdict was in his favor, the exception was not perpetuated. The official stenographer's record verifies this statement. In order to ascertain as to whether or not the plaintiff must necessarily have known of the defective condition of the hook during the few minutes that he was using it, all the circumstances, as well as his mental condition, must be considered. We concede that, in the absence of testimony to the contrary, it would be presumed that the plaintiff was a man of ordinary intelligence; but when testimony is offered to rebut this pre-

sumption, the court must agree with us upon the proposition that such testimony is admissible. The question of the plaintiff's experience, his age, etc., are all admissible as a guide to a proper conclusion as to his knowledge of a given fact. Had the plaintiff been a minor, no one would have doubted the propriety of proving this fact. Such testimony would be admissible as tending to show the extent of his experience and his degree of mental capacity. The very standard from which the Court of Civil Appeals proceeds in reaching its conclusions of law, is that the plaintiff was a man of ordinary intelligence. Appellant, throughout its brief, directly assumes that plaintiff was a man of ordinary intelligence, and proceeds to present its view of the law from that status. We think it would be safe to say that every case that is decided on a question of assumed risk, must proceed from the basis of plaintiff's experience and mental condition.

The Court of Civil Appeals erred in rendering judgment in favor of the defendant, because the record shows that by reason of the defendant wrongfully causing exceptions to be sustained to the plaintiff's petition and by leading the trial court into error, the plaintiff was deprived of testimony that would have strengthened his case, and the record discloses that the evidence was not fully developed by reason of the defendant misleading the trial court; and under such circumstances a judgment should not be rendered in the Appellate Court, and the appellant thus enabled to prevail by its own wrong.

*Houston Bros.* and *R. J. Boyle,* for defendant in error.—The Court of Civil Appeals did not err in holding that plaintiff's petition does not show a cause of action, and in rendering judgment in favor of defendant in error, because it appears that plaintiff's injuries resulted from the use of a common tool or appliance which defendant in error was not charged with the duty of inspecting, having the right to rely on the presumption that the person using it would himself detect its defects, and can not be charged with negligence for furnishing such common tool in a defective condition. Gulf, C. & S. F. Ry. Co. v. Larkin, 98 Texas Rep., 225; O'Brien v. Missouri, K. & T. Ry., 36 Texas Civ. App., 529; Gulf, W. T. & P. Ry. v. Smith, 83 S. W., 719; Miller v. Erie R. R. Co., 47 N. Y. Sup., 285; Marsh v. Chickering, 101 N. Y., 396; 5 N. E., 56; Wachsmuth v. Shaw Electric Crane Co., 118 Mich., 275; 76 N. W., 497; La Pierre v. Chicago & G. T. Ry. Co. (Mich.), 58 N. W., 60.

The Court of Civil Appeals did not err in holding in this case that the evidence does not show any negligence on the part of defendant, because the evidence in this case shows that plaintiff was injured while using a rail hook; that such a hook is a common tool which the master is not required to inspect, and may presume the servant would discover a defect therein, and can not be charged with negligence for such defect. Same authorities.

The Court of Civil Appeals did not err in holding, as a matter of law, that plaintiff could not recover, because the evidence in this case shows that the plaintiff in error, in the ordinary discharge of his duty, must necessarily have known of the defect in the hook and the conse-

quent danger of using it upon the occasion of his injury. Peck v. Peck, 87 S. W. Rep., 248; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Yarmouth v. France, L. R., 19 Q. B. Div., 647; Labatt on Master and Servant, secs. 391-396; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 19; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 159; Ft. Worth Stockyards v. Whittenburg, 78 S. W. Rep., 363; Hightower v. Gray, 83 S. W. Rep., 254; Gulf, W. T. P. v. Smith, 83 S. W. Rep., 719; Parish v. Missouri, K. & T. Ry. Co., 76 S. W., 234; San Antonio Sewer Pipe Co. v. Noll, 83 S. W. Rep., 900; Houston & T. C. Ry. Co. v. Scott, 62 S. W., 1077; Missouri, K. & T. Ry. Co. v. Dyer, 75 S. W., 930; Houston & T. C. Ry. Co. v. Martin, 21 Texas Civ. App., 209; Recka v. Ocean S. S. Co., 23 N. Y. Sup., 3.

The Court of Civil Appeals did not err in refusing to consider the allegation in plaintiff's petition, stricken out on special exception, that plaintiff was weak mentally, because the said allegation is not a part of the record in this case.

A servant assumed the ordinary obligations of the contract of employment in the absence of knowledge on the part of the master that the servant is incompetent to fully understand the hazard of the employment. Galveston, H. & S. A. Ry. Co. v. Hughes, 54 S. W. Rep., 264; Missouri P. Ry. Co. v. J. F. Callbreath, 66 Texas, 526.

WILLIAMS, Associate Justice.—Plaintiff in error, as plaintiff in the district court, recovered a judgment against defendant in error, as defendant, for damages for a personal injury sustained by plaintiff while in the service of defendant. This judgment was reversed by the Court of Civil Appeals on the ground that both the pleadings and evidence showed that "plaintiff has no case," and that court rendered final judgment in favor of defendant.

The question is whether or not the Court of Civil Appeals, after having reversed the judgment, erred in finally adjudicating the controversy. No especial point arises in this connection upon the pleadings. Those of plaintiff state the facts which the evidence tends to show in their strongest light in favor of plaintiff; and if the evidence was sufficient to go to the jury, the petition is necessarily sufficient to sustain a recovery. We shall therefore confine our discussion to the questions raised by the evidence.

Plaintiff was a member of a section gang in the service of defendant, under the immediate superintendence of a foreman. On the day when plaintiff was hurt, the men were engaged in loading flat cars with steel rails, in doing which some of them stood on the ground and placed the rails upon skids, one end of which rested on the car, and pushed them along the skids until they reached the edge of the car, when they were received by two other employes, standing on the car, and put in place. In thus placing the rails, they were lifted or pulled by means of rail hooks, which were simple tools with a crook at one end, a handle at the other, and a stem about twenty inches long, the crooked end being inserted in the bolt holes in the rails. Plaintiff had been working on the ground until just before the accident, when he was ordered

by the foreman to go upon the car and assist another in handling the rails. A rail hook had already been placed upon the car, and plaintiff took and used it in his work. After he had handled in the manner stated from three to five rails, the hook, because it was worn and was too small and not sufficiently curved, slipped from the hole in a rail as plaintiff was pulling upon it, whereby he was caused to lose his balance and fall from the car, and suffer the injuries of which he complains. He had had previous experience in thus handling rails and in the use of such hooks, but it does not appear that he knew of the presence of any defective ones. He testified that he did not notice the defective condition of the hook until he had fallen, when he examined it, and at once saw that it was in the condition stated. He was ordered by the foreman when he went upon the car, and continually while doing the work, to "hurry up and get the rails out of the way;" and he says that he had no occasion to examine the hook—"had to pick it up as I came," and thought it safe. He admits, however, that he had to see the hook in inserting it into the bolt-holes. He did not select the particular hook, but found it upon the car where one was usually put for use when such work was being done; and he states that "nobody knew anything about the hooks until he was on the car; he never climbed on the car with the hook—he found it up there." This statement will be sufficient to indicate the questions of fact and law to be passed upon.

The first question is whether or not the evidence raises an issue of fact for the jury as to the master's negligence, and in determining this the facts are to be considered in their combination, and an answer found to the inquiry whether or not they warrant a reasonable opinion that there was wanting on the master's part that ordinary care exacted by the law for the safety of his employe. This is not to be determined, in a case like this, by any hard and fast rules of law as to the duty of inspection, but by the judgment of rational minds upon the facts; and if there be room for reasonable differences of opinon, the judgment of a jury must be taken. No solution of the question is reached by saying, as was said in the Larkin case (98 Texas, 225), that the duty of ordinary care did not require of the master that regular and careful inspection of this simple tool which is essential to such care in relation to more complicated and dangerous machinery and appliances. With that much conceded, it is still true that, in furnishing a tool of any kind, the master is bound to use ordinary care for the safety of the servant who uses it. What shall be considered as constituting such care must be determined from the circumstances of each situation as it arises. It is true that oftentimes the character and condition of an implement are so plain that the master can not be said to have been guilty of neglect of the duty because he has left it to the servant to see and know for himself all that was essential to his safety; but this assumes that there has been sufficient opportunity on the servant's part to ascertain, in the prudent use of the thing, the risks to be avoided. If the master actually puts into the hands of his servant an implement, which the master ought to know to be in a dangerous condition, for such immediate and hurried use that the servant is likely to

use it without opportunity to see the defect and the attendant danger, and to receive injury, the master's liability for an injury thus caused would scarcely be denied. This case is not clearly of that character, and is, it must be confessed, a very close one; but we are of the opinion that the circumstances as stated in plaintiff's evidence, the tendency and effect of which we shall not discuss at length, were such as to entitle him to have a jury determine the question of negligence vel non of the defendant, upon a consideration of all the facts. The question of assumed risk depends upon the same considerations. If there was negligence on the part of the defendant in furnishing a tool which, because of its unfitness for the use to which it was to be put, exposed plaintiff to a danger which the exercise of ordinary care in doing his work would not have brought to his knowledge, he can not be held to have assumed the risk resulting from his employer's negligence. Whether or not the condition of a tool is so obvious that a servant necessarily assumes the risk of using it, must depend, in some cases, not merely upon the simple character of the instrument itself, and the openness of the defects in it, but also upon the situation and condition of the servant himself, his opportunity and capacity for discovering that condition, and the circumstances calculated to withdraw his attention from it; and the test in doubtful cases is the judgment of a jury upon the question whether or not persons of ordinary prudence, similarly situated, would have discovered the risk. Upon this, as well as upon the question as to the defendant's negligence and that of contributory negligence, the evidence presented matters for the determination of the jury.

A ruling of the trial court upon exception to plaintiff's petition, in striking out allegations as to plaintiff's mental capacity to understand the danger which he incurred, and his reliance upon the superior ability of his foreman, was discussed in argument, and we deem it proper to say that such matters may properly be considered in connection with the defense of assumed risk and contributory negligence. No allegation was made of knowledge on the part of defendant of such facts, as they were not stated as affecting the question of defendant's negligence, but were relied on merely as circumstances influencing the decision of the other issues named. For that purpose they were legitimate. In Marsh v. Chickering, 101 N. Y., 399, it is said: "In considering the application of the rule just stated, due regard must be had to the limited knowledge of the employe as to the machinery and structure on which he is employed, and to his capacity and intelligence, and to the fact that the servant has the right to rely upon the master to protect him from danger and injury and in selecting the agent from which it may rise." Many other authorities, the results of which are believed to be correctly stated in Labatt's Master and Servant, sec. 402a, are to the same effect.

In support of the decision of the Court of Civil Appeals, great reliance is placed upon the decision of this court in the Larkin case, supra; but it does not, as we have indicated, reach the questions of fact arising from the evidence before us. It was held in that case that a master is not required to inspect simple tools and appliances

which he furnishes to his servants, as he is required to inspect more complicated and dangerous instrumentalities with which the servant is brought in contact; but it was not held there that the mere simplicity of the tool would exempt the master from all care in every situation in which he might require the servant to use it.   Neither that, nor any other well-considered case, goes to such a length.   Larkin was hurt by the breaking of the globe of a lantern while he was cleaning it.   There was nothing to indicate negligence on the part of the railroad company except the omission to inspect the lantern, and as it was in Larkin's custody, to be used and kept in proper condition by him, it was held that no duty of inspection existed, with reference to him, at least, to ascertain matters which he could learn as well as any inspector.   And we do not hold that the duty of general inspection was upon the defendant in this case with reference to tools like that in question, but merely that it is a question of fact whether or not the defendant furnished to plaintiff this hook under circumstances showing a want of ordinary care for his safety, and whether or not plaintiff knew, or ought to have known, its condition and assumed the risk, or was guilty of negligence in using it as he did.   In the cases of Gulf, W. T. & P. R. Co. v. Smith, 83 S. W., 719; Houston & T. C. R. R. Co. v. Scott, 62 S. W., 1077, and many others that could be cited, it appeared that the plaintiff either actually knew of the condition of the implement of which he complained, or that he had such opportunities of knowing as to conclusively show that he ought to have known.   Each case necessarily depends on its own facts when the question is whether or not there is evidence to go to the jury, and a decision of the question upon one state of facts is usually of little help in a different case.

For the reasons given, we are of the opinion that the Court of Civil Appeals erred in rendering final judgment, and that part of its judgment is reversed and the cause remanded.

*Reversed and remanded.*