CHESAPEAKE AND OHIO RAILWAY COMPANY
*v.* LEITCH.

CERTIORARI TO THE SUPREME COURT OF APPEALS OF WEST
VIRGINIA.

No. 98.　Argued March 14, 1928.—Decided April 9, 1928.

A locomotive engineer assumes the risk of being struck by a mail crane or mail sack hanging from it (*Southern Pacific Co.* v. *Berkshire,* 254 U. S. 415), even though placed some inches closer to the track than the general plan for the railroad provided, no unquestionable disregard of obvious precautions being shown. P. 430.

101 W. Va. 230, reversed.

CERTIORARI, 273 U. S. 678, to a judgment of the Supreme Court of Appeals of West Virginia, sustaining a recovery in an action under the Federal Employers' Liability Act.

*Mr. Douglas W. Brown* for petitioner.

*Mr. John H. Holt,* with whom *Messrs. George B. Martin* and *Rufus S. Dinkle* were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is an action brought by the respondent, an engineer, to recover from the petitioner for injuries suffered by him through contact with a mail crane, or mail sack hanging from it, as he looked from the window of his engine, upon the petitioner's road. There is no doubt that the case is governed by the Federal Employers' Liability Act, but the respondent got a verdict in the State Court which was sustained by the Supreme Court of Appeals, 101 W. Va., 230, and the question is whether there is any sufficient distinction between this and *Southern Pacific Co.* v. *Berkshire*, 254 U. S. 415, in which it was held that the engineer took the risk. The grounds of that decision were that it is impracticable to require railroads to have no structures so near to their tracks as to endanger persons who lean from the windows of the cars; that they are obliged to erect mail cranes near enough to the tracks for the trains to pick up mail sacks without stopping; that it is almost if not quite impossible to set the cranes so far away as to leave no danger to one leaning out, and that in dealing with a well known incident of the employment, adopted in the interest of the public, it is unreasonable to throw the risk of it upon those who were compelled to adopt it.

Of course it is answered that these general considerations should not exonerate the railroads from using such care as they can within the conditions. But it seems to us unjust to let the risk of a danger that in any event is imminent vary upon disputed evidence that the danger was brought an inch or two nearer than it would have been if a blue print adopted for the whole line had been followed with a more precisely mathematical accuracy. In the *Berkshire* case the testimony for the plaintiff left a distance of fourteen inches from the end of the crane to the car. Here the plaintiff's witness makes it ten. The

witnesses for the petitioner with greater plausibility make it appreciably more. If there is to be a standard in these cases, and if, as decided, the general rule is that the engi-neer takes the risk, the railroad should not be made liable for this class of injury except where some unquestionable disregard of obvious precautions is shown. The plaintiff here, as in *Berkshire's* case, well knew of the existence of the crane, which had been in place for three or four years. He was an experienced engineer and, although here as there presumably he never had measured the distance, he like Berkshire knew the fact that threatened danger. At the trial Leitch testified that he was looking to see the position of a block signal, pointedly contradicting a state-ment that he dictated and signed near the time of the accident. He admitted, however, that it was the fire-man's business to look out for the block and notify him, and the fireman's more favorable position for seeing and other circumstances sufficiently indicate that there was no great or sudden emergency, if that would affect the case. Without discussing the evidence in detail we are satisfied upon a consideration of it that it does not show grounds for making an exception to the general rule.

*Judgment reversed.*