**QUANAH, A. & P. RY. CO. v. GRAY.**

**No. 6499.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1933.

Rehearing Denied March 20, 1933.

FOSTER, Circuit Judge, dissenting.

G. E. Hamilton, of Matador, Tex., and Bert King, of Wichita Falls, Tex., for appellant.

E. W. Napier, of Wichita Falls, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

From a verdict and judgment against it in a personal injury suit, defendant appeals. Complaining of the verdict as without basis in the evidence, it seeks a reversal because of the failure of the trial court to grant its motion for an instructed verdict. No other substantial claim of error was saved. If the evidence demanded a verdict for the defendant, the case must be reversed. If it did not, it must be affirmed.

Plaintiff claimed that the handle of a hammer he and his helper were using broke because of the brashness and brittleness of the handle, injuring him. He alleged that a hammer with such a handle was dangerous, because of its liability to break under strain, and was therefore unfit for use; that when the handle was new this condition would have been discovered before it was put in use had ordinary care been used, but that when plaintiff took it it had become so grimed that its condition could not be told. He also pleaded that the hammerhead was battered and burred, making it difficult to strike clean, straight blows with it, thus increasing its liability to break under strain; and, further, that defendant's foreman, while demonstrating its use to plaintiff's helper shortly before the injury, had struck severe and glancing blows with it, thus further weakening and fracturing the defective handle, and making it more dangerous.

Defendant contested the case on every point. It answered that plaintiff had not been injured at all; that, if he had been, it was through no fault of defendant. That all its hammers were bought from reputable makers, and were duly inspected before being placed in the heads for use in the shop. That after such inspection they were placed in the shop for use by plaintiff and others of its employees. That it neither furnished plaintiff the hammer which he did use, or any other particular hammer. That plaintiff had full authority and was in duty bound to select from the tools a proper hammer for his purpose. That the hammer in question was a simple tool, and that the duty of inspecting it, and determining its condition before he used it, rested not on defendant, but on plaintiff, an experienced worker. That the breaking of the hammer handle was either due to a latent defect in it not discoverable by due care, or its condition was discoverable, and, in using it, plaintiff assumed the risk of injury from it, and was guilty of contributory negligence.

The proof tended to show that the cause of the breaking of the handle was the brashness or brittleness of the wood, due to its having been cut from dead timber; that a reasonably careful inspection made when the handle was new and clean and before it had been placed in the hammer would have re-

vealed that it was brash; that such handles, though used in cheap tools, were unsafe because likely to break. Defendant's foreman testified as to the hammer, which plaintiff claimed injured him, "I would say, this hammer is in a dangerous condition, it is burred and battered; I would not permit the men to use that character of hammer if I knew it." It was also proved as alleged that the foreman did, just before the accident, take the hammer from plaintiff's helper and strike strong blows with it to demonstrate how it should be used.

It is true that defendant's witnesses vigorously denied that the hammer which plaintiff offered in evidence as the one which broke and injured him had ever been in their shop, and that there was an equally vigorous denial that plaintiff had been injured at all. There was evidence, however, which if believed, supported the verdict of the jury that plaintiff had been struck by the hammer in question, that he had suffered injuries in consequence, that the hammer was in a dangerous condition, and that had the defendant exercised ordinary care in regard to it, it would not have been in use in the shop.

Appellant, striking fundamentally at plaintiff's right to recover, insists that the "simple tool" doctrine exempts it from liability in this case. It urges that that doctrine relieves the employer, as to such tools, of the duty to use ordinary care to furnish reasonably safe appliances. It urges that when such tools are furnished for an employee's use, he takes them cum onere with the duty on him not to use them unless they are in a condition to be used. That this is so, because in such case the employee, having equal knowledge with the employer, the employer need be under no duty to him. It urges that it could not be at fault here as to this simple tool, because either the defect in the tool was patent and observable by the simple inspection which the rule requires the employee to make, or it was latent and undiscoverable by both employer and employee, and the injury from its breaking was the result of an unavoidable accident. Appellee denies that there is any simple tool doctrine which, as matter of law, relieves the master of the duty of care to furnish safe tools. He insists that, as matter of law, an employer is under the same general duty of care to furnish safe simple tools to work with as he is to furnish safe complex ones, though as matter of fact the duty is not as exacting in the case of simple tools, and it is more difficult to make out a case of breach of it as a basis of liability; that it has been erroneously gathered into a legal formula from expressions used by courts in cases whose facts were such as not to admit of a finding by reasonable minds that there was negligence. He declares that the so-called doctrine represents an effort to formulate into a pattern or standard states of fact so as to say of them that they make out, as matter of law, the affirmative defenses of contributory negligence and assumed risk.[1] In this connection plaintiff invokes section 6437, Rev. Statutes of Texas 1925, providing, in substance, that the plea of assumed risk shall not be available to bar recovery of damages in suits by employees of railroad corporations. That such employees do not assume risks resulting from negligence on the part of their employers, though known to them. That even if knowing the hammer was defective through the negligence of the defendant, he had used it, this would not have barred his recovery; it would only have made an issue of contributory negligence, not in defeat of his action, but in diminution of his damages. He declares that in some of the cases, where the rule has been otherwise stated or applied, for instance, as relieving the master altogether of the duty of inspection, as in O'Hara v. Brown (C. C. A.) 171 F. 394; Hedicke v. Highland Springs Co., 185 Minn. 79, 239 N. W. 896; Ft. Worth & D. C. Ry. Co. v. McCrummen, 63 Tex. Civ. App. 594, 133 S. W. 899; G. C. & S. F. Ry. v. Larkin, 98 Tex. 227, 82 S. W. 1026, 1 L. R. A. (N. S.) 944, the facts in those cases have been such as to demand a verdict for defendant. While its statement in that form in others represents the judicial desire to attain in negligence cases, that "delusive exactness" so strongly deprecated by Holmes, J., in Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 133, 66 L. Ed. 254, 27 A. L. R. 375, as "a source of fallacy throughout the law." A desire to make the law of negligence more certain by formulating fact cases into patterns or standards for judges to decide negligence cases by. Thus constantly diminishing the number of jury cases, and enabling cases to be decided more and more without submitting them to juries, under that "featureless generality, the care which a prudent man would

---

[1] "It is submitted that it is illogical and unreasonable to say that the master is free from the obligation of using ordinary care merely because the appliance to be furnished is a simple tool, but the better view is that the appliance being a simple tool and entirely understood by the servant, the latter's obligation to his master and to himself are increased, and cases involving injuries from simple tools furnish a broader scope for the application of the various affirmative defenses which are ordinarily available to the master." Labatt's Master and Servant, § 924a, p. 2484.

use under the circumstances." Holmes, Common Law, p. 111.[2]

He contends that under the influence of this view for the law of injuries resulting from the use of tools, a hardware catalog may well serve as a digest, with liability determined by the page of the catalog on which the tool causing the injury is found.

That after all is said and done, whether advanced as relating to the duty of care, or as affirmative defense, there is no sound basis in the law for making the complex or simple character of the tool which caused the injury the basis of a difference in the statement of the law of reciprocal rights and duties of employer and employee. That in regard to both the rights and duties are the same; in regard to both it is the duty of the employer to use due care to furnish reasonably safe tools and appliances for doing the work, and of the employee to exercise due care in working with them. Drake v. S. A. & A. P. R. R., 99 Tex. 245, 89 S. W. 407; H. & T. C. R. R. v. Patrick, 50 Tex. Civ. App. 491, 109 S. W. 1097, 1099; Williams v. Garbutt Lbr. Co., 132 Ga. 221, 64 S. E. 65; St. Louis, S. W. Ry. of Texas v. Schuler, 46 Tex. Civ. App. 356, 102 S. W. 783, 785; Adams v. G. C. & S. F. Ry., 101 Tex. 5, 102 S. W. 906, 907; Fort Worth & D. C. Ry. v. McCrummen, 63 Tex. Civ. App. 594, 133 S. W. 899; Buchanan & Gilder v. Blanchard (Tex. Civ. App.) 127 S. W. 1153.[3]

We have given careful consideration to all of these contentions. We find courts in different jurisdictions differing both in their statement of the scope and effect of the rule, and in their application of it. There is considerable authority for the view of appellee that the rule is a defensive one, and that it only applies where the defenses of contributory negligence or assumed risk are available to the master. Labatt, Master and Servant, supra. Gray v. Doe Run Lead Co. (Mo. Sup.) 53 S.W.(2d) 877, 879, and cases cited. There is authority for the contrary view. Hedicke v. Highland Springs Co., 185 Minn. 79, 239 N. W. 896. The most frequent application of the doctrine is found in those cases where the master, having turned over to the complete charge of a servant a tool in good condition expecting him to look after its condition, is not held to a continuing duty of inspection; that duty being shifted to the servant who, having complete charge of the tool, is, because of its simple nature, presumed to keep himself advised of its condition.

---

[2] It is interesting to contrast the value set on "delusive exactness" when it limits the fact finding range of a jury, and when it limits that of judges. "To leave the question forever to a jury is simply to leave the law uncertain. * * * The function of the jury is in theory constantly vanishing. * * * When the mind of the court has once been fully satisfied as to the rule of conduct in certain circumstances, it is little better than lawlessness if the same rule is not applied in similar cases thereafter." Holmes, The Theory of Torts, 7 Am. L. R. 652; reprinted in Harvard Law Review, vol. 44, p. 773. (1872).

"It is a featureless generality that the defendant was bound to use such care as a prudent man would use under the circumstances; this generality ought to be continually giving place to the specific one that he was bound to use this or that precaution under these or those circumstances. The standard which the defendant in tort was bound to come up to was a standard of specific acts or omissions with reference to the specific circumstances in which he found himself." Holmes, The Common Law, p. 111 (1881).

"The railroad is required and presumed to know its duty in the matter and it would seem that the Court ought to be equally well informed. It cannot be that the theory of the law requires it to be left to the uncertain judgment of a jury in every case." Holmes, J., declaring a standard of conduct in mail crane and semaphore injuries. Southern Pacific v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 163, 65 L. Ed. 335; Chesapeake & Ohio R. R. v. Leitch, 276 U. S. 429, 48 S. Ct. 336, 72 L. Ed. 638; Atlantic Coast Line Co. v. Powe, 283 U. S. 401, 51 S. Ct. 498, 75 L. Ed. 1142. (1931).

"It is true * * * that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts." Holmes, J., fixing a standard for crossing accidents. Baltimore & Ohio R. R. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645 (1927).

Compare " 'You fix the standard for reasonable, prudent, and cautious men under the circumstances of the case as you find them * * * and neither the judge who tries the case nor any other person can supply you with the criterion of judgment by any opinion he may have on that subject.' * * *

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent. * * * When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Lamar, J., in Grand Trunk R. R. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 682, 36 L. Ed. 485, a crossing injury case.

Compare, also, Drake v. S. A. & A. P. Ry., 99 Tex. 245, 89 S. W. 407, Infra Note 4.

[3] "It is the duty of the master to use ordinary care to furnish his servants with reasonably fit and safe tools or implements with which to do his work. This duty is personal to the master, and is nondelegable. No duty of inspection of the tools furnished by the master rests upon the servant, and he assumes no risk of their defective condition, unless he knows of the defects, or the defects are so obvious as to charge him with knowledge of them and of the danger incident to their use. This rule is not limited in its application to complex instrumentalities, but applies to simple tools in ordinary use under many and varying circumstances"—citing many authorities. Buchanan & Gilder v. Blanchard (Tex. Civ. App.) 127 S. W. 1153, 1154.

Interesting cases discussing the subject are N. Y. N. H. & Hartford R. R. v. Vizvari (C. C. A.) 210 F. 118, L. R. A. 1915C, page 11; Mercer v. Atlantic Coast Line, 154 N. C. 399, 70 S. E. 742, Ann. Cas. 1912A, 1002; Hedicke v. Highland Springs, and Gray v. Doe, supra, and the Texas cases above cited, while exhaustive notes, with catalogues of cases, may be found in Labatt, § 924a, supra, and in Melvin Cooper v. Penn Bridge Co., 47 App. D. C. 467, L. R. A. 1918D, 1138; Vanderpool v. Partridge, 79 Neb. 165, 112 N. W. 318, 13 L. R. A. (N. S.) 668; Sheridan v. Gorham, 28 R. I. 256, 66 A. 576, 13 L. R. A. (N. S.) 687; Pierce v. So. Pac. Co., 120 Cal. 156, 47 P. 874, 52 P. 302, 40 L. R. A. 352; Greer v. Austin, 40 Okl. 113, 136 P. 590, 51 L. R. A. (N. S.) 336; Rase v. Minneapolis, St. P. & S. S. M. R. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138; Brouseau v. Kellogg Switchboard & Supply Co., 158 Minn. 312, 122 N. W. 620, 27 L. R. A. (N. S.) 1052.

■ We have reached the conclusion that there is no reasonable basis for the statement of a "simple tool doctrine" as a doctrine or rule of law, either relieving the defendant as matter of law of all duty of inspection, or establishing as matter of law its affirmative defenses, where injuries from simple tools are in question. That, generally speaking, it may be said that the differing results as to liability in the cases of simple and of complex tools are properly arrived at because of differences not in the applicable rules of law, but in the facts to which the rules of law are applied. We think the Supreme Court of Texas in Drake v. S. A. & A. P. R. R., 99 Tex. 245, 89 S. W. 407, a simple tool case, has correctly stated the applicable legal rule, and set out there irrefragable reasons for its view that the same rule applies in the case of simple tools as of complex ones. That in each case it is first for the court to say whether, for want of evidence, a verdict is demanded, and, second, for the jury to say, under appropriate instructions, where the truth lies.[4]

■ ■ Applying that rule to the facts of this case, bearing in mind that by the statute plaintiff did not assume risks resulting from the negligence of defendant, we think it cannot be said that a verdict for defendant was demanded. The jury had the witnesses before them. They heard their testimony. They found that the defendant was negligent; that plaintiff was not. We cannot say that reasonable minds could not have so found. Upon the evidence they had it was for them to say, as to the handle, whether the evidence established that it was a brash handle, and that defendant, in the exercise of due care, should have discovered this before putting it in use. It was for them to say, as to the hammer itself, whether the defendant was negligent in permitting it to remain in the shop for its men to use. It was for the jury also to say whether the defense of contributory negligence was made out. They said it was not. In view of all the evidence, including the undisputed proof that the foreman had, shortly before the injury, used the hammer to demonstrate its proper use, and without objecting to its use as dangerous, had handed it back to plaintiff and his helper, it cannot be said that the jury should, as matter of law, have found plaintiff guilty of contributory negligence.

The judgment is affirmed.

FOSTER, Circuit Judge, dissents.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.

---

[4] "Whether or not the evidence raises an issue of fact for the jury as to the master's negligence * * * is not to be determined, in a case like this, by any hard and fast rules of law as to the duty of inspection, but by the judgment of rational minds upon the facts, and, if there be room for reasonable differences of opinion, the judgment of a jury must be taken. No solution of the question is reached by saying, as was said in the Larkin Case, 98 Tex. 225, 82 S. W. 1026 [1 L. R. A. (N. S.) 944], that the duty of ordinary care did not require of the master that regular and careful inspection of this simple tool which is essential to such care in relation to more complicated and dangerous machinery and appliances. With that much conceded, it is still true that, in furnishing a tool of any kind, the master is bound to use ordinary care for the safety of the servant who uses it. What shall be considered as constituting such care must be determined from the circumstances of each situation as it arises." Drake v. S. A. & A. P. Ry. Co., 99 Tex. 245, 89 S. W. 407, 408.